Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| PUSH IT SERVICES LIMITED T/C/P PUSH SOLUTIONS LIMITED, T/C/P PUSH IT, T/C/P PUSH SOLUTION LIMITED T/A PUSH IT<br><br>Recurrida<br><br>v.<br><br>THE LANDMARK LLC<br><br>Peticionaria | KLCE202401281 | *CERTIORARI*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Núm.: SJ2023CV08209<br><br>Sobre: Exequatur |

Panel integrado por su presidenta, la Juez Brignoni Mártir, la Jueza Álvarez Esnard y la Jueza Prats Palerm

Álvarez Esnard, Jueza Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 24 de enero de 2025.

Comparece ante nos The Landmark LLC ("The Landmark", "la parte peticionaria" o "la parte demandada") mediante una *Petición de Certiorari*. Nos solicita la revocación de la *Orden* emitida el 26 de agosto de 2024, notificada al día siguiente, por el Tribunal de Primera Instancia, Sala Superior de San Juan ("el foro primario" o "el foro *a quo*"). Por virtud de la misma, el foro primario declaró *Sin Lugar* la solicitud de desestimación presentada por la parte peticionaria en el procedimiento de exequátur instado por Push Solutions Limited ("Push IT", "la parte recurrida" o "la parte demandante").

Por los fundamentos que expondremos a continuación, **denegamos** el auto de *certiorari*.

### I.

El 28 de agosto de 2023, Push IT Services Limited[1], denominada compañía localizada en el Reino Unido, radicó una

---

[1] **Surge del expediente ante nuestra consideración que, la parte demandante compareció también como Push Solutions Limited o Push IT.**

demanda sobre *Petición de Exequátur* en contra de The Landmark ante el Tribunal de Primera Instancia.[2] En esencia, solicitó la convalidación y el reconocimiento de un dictamen judicial emitido en el Reino Unido por el incumplimiento contractual de la parte demandada.

Luego de una serie de acontecimientos procesales, el 18 de mayo de 2024, The Landmark presentó una *Solicitud de Desestimación* al amparo de la Regla 10.2(5) de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2(5).[3] En esta, aseveró que Push It Services Limited ha comparecido ante el foro primario con distintos nombres, entiéndase Push Solutions Limited y Push IT, para omitir que existen otras entidades peticionarias en el pleito presente. En ese sentido, puntualizó que Push IT Services Limited es diferente a la empresa que obtuvo una sentencia a su favor en el Reino Unido conocida como Push Solutions Ltd. Agregó que dicha empresa se encuentra disuelta. Por tanto, considera que Push IT Services Limited no tiene legitimación activa para instar el procedimiento de exequátur. En vista de lo anterior, solicitó la desestimación de la acción legal.

En respuesta, el 7 de junio de 2024, Push IT Services Limited, sometió su *Oposición a Desestimación.*[4] Argumentó que solo pretende hacer efectiva la *Sentencia* emitida el 27 de mayo de 2022 en County Court Money Claims Centre del Reino Unido. Respecto al señalamiento de legitimación activa, adujo que no procede la desestimación por ese razonamiento, pues existen otras alternativas menos drásticas, tales como ratificación de la acción legal o la

---

[2] Apéndice de la parte peticionaria, págs. 2-5. Destacamos que el 21 de febrero de 2024, el foro *a quo* impuso una fianza de no residente a Push Solutions por la suma de $1,500.00.

[3] Apéndice de la parte peticionaria, págs. 98-113.

[4] Apéndice de la parte peticionaria, págs. 114-121. **Conviene resaltar que, en la presentación de la *Oposición* se identificó, a su vez, como Push Solutions Limited o Push IT.**

sustitución del promovente, según dispone la Regla 15.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 15.1.

Evaluados los argumentos de las partes, el 11 de junio de 2024, el Tribunal de Primera Instancia dictó *Orden*, notificada al día siguiente, en la cual dispuso lo siguiente:

> Se declara Sin Lugar la SOLICITUD DE DESESTIMACIÓN y se concede un plazo de 30 días a la Demandante para enmendar la Demanda para cumplir con la Regla 15.1 de Procedimiento Civil de modo que surja de esta la legitimación activa de la parte Demandante para solicitar el remedio que suplica. **La Sentencia objeto de PETICIÓN DE EXEQUATUR fue emitida a favor de Push Solutions Limited**. (Énfasis nuestro).[5]

Así las cosas, el 26 de junio de 2024, **Push Solutions Limited** presentó *Petición de Exequátur Enmendada.*[6] Nuevamente solicitó la convalidación y el reconocimiento del dictamen judicial decretado en el Reino Unido contra The Landmark por incumplimiento contractual.

Ese mismo día, el foro *a quo* emitió y notificó *Orden* en la cual concedió el término de veinte (20) días a la parte demandada para presentar su contestación a la alegación enmendada.

No obstante, el 16 de julio de 2024, The Landmark presentó una *Solicitud de Desestimación de Petición Enmendada.*[7] De nuevo, argumentó que la compañía Push Solutions LTD está disuelta en el Reino Unido desde el 7 de noviembre de 2023, toda vez que comenzó su proceso de disolución el 13 de septiembre de 2021. Por tanto, solicitó la desestimación de la demanda por falta de legitimación activa, toda vez que la parte recurrida no tiene capacidad jurídica

---

[5] Apéndice de la parte peticionaria, pág. 122.
[6] Apéndice de la parte peticionaria, págs. 6-89. **En la entrada número veintisiete (27) del Sistema Unificado de Manejo y Administración de Casos (SUMAC) consta un documento intitulado *Apostille*, cuyo contenido hace referencia al alegado reclamo presentado ante el Tribunal del Reino Unido en el cual la parte demandante se presentó también como Push Solutions Limited o Push IT.**
[7] Apéndice de la parte peticionaria, págs. 123-144.

para solicitar el exequátur y además no está autorizada a hacer negocios en Puerto Rico como corporación foránea.

Por su parte, el 5 agosto de 2024, **Push Solutions Limited** sometió su *Oposición a Solicitud de Desestimación de Petición Enmendada.*[8] Advirtió que The Landmark presentó los mismos argumentos de su anterior moción de desestimación, la cual el foro *a quo* declaró *No Ha Lugar*. Agregó que dicha empresa continúa incumpliendo sus obligaciones y pretende litigar en esta jurisdicción asuntos resueltos en el dictamen judicial emitido en el Reino Unido. En vista de lo anterior, solicitó que el foro primario declarara *No Ha Lugar* la solicitud de desestimación. A su vez, le peticionó que los argumentos levantados en su contra se decretaran cosa juzgada.

Luego de considerar el razonamiento previamente esbozado, el 26 de agosto de 2024, el Tribunal de Primera Instancia emitió *Orden*, notificada al día siguiente, en la cual resolvió *Sin Lugar* la solicitud de *Solicitud de Desestimación de Petición Enmendada* presentada por The Landmark.[9]

Oportunamente, el 11 de septiembre de 2024, The Landmark presentó *Solicitud de Reconsideración.*[10] En este escrito, argumentó que Push Solutions LTD fue disuelta, según establece un *Certificado* emitido por el Reino Unido el 28 de abril de 2024. Expuso, además, que durante la disolución de la compañía se informó que la sentencia dictada contra The Landmark constituía un activo. En esa dirección, aseveró que la Sección 1012 del Companies Act (2006) dispone que los activos de las compañías disueltas pasan a la Corona del Reino Unido. En vista de ello, sostuvo que procede la desestimación por falta de legitimación activa.

---

[8] Apéndice de la parte peticionaria, págs. 145-152. Nuevamente en esta comparecencia se identificó también como **Push IT**.
[9] Entrada treinta y uno (31) de SUMAC.
[10] Apéndice de la parte peticionaria, págs. 154-199.

Ante tales argumentos, el 18 de septiembre de 2024, el foro *a quo* emitió *Orden*, notificada al día siguiente, en la cual concedió a la parte demandante el término de veinte (20) días para presentar su posición al respecto.[11]

De conformidad con lo anterior, el 25 de septiembre de 2024, Push Solutions Limited sometió una *Moción en Cumplimiento de Orden y Oposición a Solicitud de Reconsideración*, en la cual sostuvo que la parte demandada por tercera ocasión solicitó la desestimación a base del mismo razonamiento.[12] Aseguró que el único propósito del presente pleito es convalidar y reconocer judicialmente una sentencia extranjera, y no litigar lo que en todo caso se debió atender ante la jurisdicción del Reino Unido.

Tras evaluar ambas posturas, el 23 de octubre de 2024, el foro primario dictó *Orden,* notificada al día siguiente, en la cual declaró *Sin Lugar* la desestimación solicitada por The Landmark.[13]

Inconforme con tal proceder, el 25 de noviembre de 2024, The Landmark recurrió a este Tribunal de Apelaciones mediante una *Petición de Certiorari.* En su recurso, esboza el siguiente señalamiento de error:

> **Erró el Tribunal de Primera Instancia al no desestimar la Petición de Execuátur Enmendada debido a que la parte Demandante-Recurrida no tiene legitimación activa para demandar en Puerto Rico al ser una entidad disuelta que ha dejado vacante los activos que pudiera tener y al ser una entidad que no está autorizada a hacer negocios en Puerto Rico. En la alternativa, el TPI debió haber dado un término razonable conforme a la Regla 15.1 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 15.1 para que la persona con derecho ratifique, se una o sustituya al promovente.**

Examinado su recurso, esta Curia emitió *Resolución* en la cual ordenó a la parte recurrida a mostrar causa por la cual no debemos expedir el auto de *certiorari* y revocar la determinación impugnada.

---

[11] Entrada treinta y tres (33) de SUMAC.
[12] Apéndice de la parte peticionaria, págs. 200-203.
[13] Apéndice de la parte peticionaria, pág. 153.

En cumplimiento con lo anterior, el 5 de diciembre de 2024, Push Solutions Limited sometió un escrito intitulado *Memorando en Oposición a Expedición de Petición de Certiorari*.

Con el beneficio de las comparecencias de las partes, procedemos a reseñar el marco legal pertinente a la controversia ante nuestra consideración.

## II.
### A. Recurso de certiorari

Es norma reiterada que, el auto *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una determinación de un tribunal inferior. *Orthopedics Prod. Of Puerto Rico, LLC v. Medshape, Inc.*, 207 DPR 994, 1004 (2021); *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020). Véase, también, Artículo 670 del Código de Enjuiciamiento Civil de 1933, Ley de Recursos Extraordinarios, 32 LPRA sec. 3491. La característica distintiva de este recurso "se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 209 (2023); *IG Builders et al.* v. *BBVAPR,* 185 DPR 307, 338 (2012).

Ahora bien, el ejercicio de nuestra discreción judicial no es absoluto. A tales efectos, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita las instancias que activan nuestras facultades revisoras ante las resoluciones y las órdenes interlocutorias:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de **una moción de carácter dispositivo**. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de

decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. (Énfasis nuestro).

A pesar de que la Regla 52.1 de Procedimiento Civil, *supra*, permite revisar las determinaciones interlocutorias recurridas, "la expedición del auto y la adjudicación en sus méritos es discrecional". *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008). En consonancia con lo anterior, la Regla 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, preceptúa los criterios para la expedición de un auto de *certiorari*:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Estas consideraciones orientan la función del foro apelativo para ejercer sabiamente nuestra facultad discrecional. *Rivera et al. v. Arcos Dorados et al., supra,* pág. 209. A su vez, la precitada disposición reglamentaria permite que el análisis revisorio no se efectúe en el vacío ni en ausencia de otros parámetros. *800 Ponce de León v. AIG, supra,* pág. 176.

En atención a los preceptos discutidos, los tribunales revisores no debemos intervenir en las determinaciones de hechos del tribunal de instancia, "salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad o incurrió en craso abuso de discreción o en error manifiesto". *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018). Véase, además, *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013). Así pues, nos corresponde ser cuidadosos y conscientes de la naturaleza de la controversia ante nuestra consideración en tal ejercicio discrecional. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 849 (2023).

Por último, es menester puntualizar que la denegatoria del auto de *certiorari* no implica la ausencia de error en el dictamen, cuya revisión se solicita, ni constituye una adjudicación en sus méritos. *Torres Martínez v. Torres Ghigliotty, supra*, pág. 99. En estos casos, la denegatoria es una facultad discrecional, que evita una intervención apelativa a destiempo con el trámite pautado por el foro de instancia. Íd. Por tanto, una vez el foro primario dicte sentencia final, la parte afectada ostentará el derecho para presentar el recurso apelativo correspondiente. Íd. págs. 98-99.

### B. Legitimación activa

Como es sabido, "[l]a doctrina de justiciabilidad requiere la existencia de un caso o controversia real para que los tribunales puedan ejercer válidamente su jurisdicción". *Rivera Segarra v. Rivera Lassén*, 2024 TSPR 60, 213 DPR ___ (2024); *Hernández, Santa v. Srio. de Hacienda,* 208 DPR 727, 738 (2022). Así pues, una controversia es justiciable cuando existan partes con intereses encontrados cuyo propósito sea obtener un remedio que tenga un efecto sobre la relación jurídica. *Asoc. Fotoperiodistas v. Rivera Schatz,* 180 DPR 920, 931 (2011); *E.L.A. v. Aguayo,* 80 DPR 552, 584 (1958).

No obstante, una controversia no es justiciable de mediar alguno de los siguientes escenarios: (1) se procura resolver una cuestión política; (2) **una de las partes carece de legitimación activa**; (3) hechos posteriores al comienzo del pleito han tornado la controversia en académica; (4) las partes están tratando de obtener una opinión consultiva, o (5) se intenta promover un pleito que no está maduro. *Ramos, Méndez v. García García,* 203 DPR 379, 394 (2019); *Bhatia Gautier v. Gobernador*, 199 DPR 59, 68-69 (2017). (Énfasis nuestro).

Cónsono con lo anterior, el principio de justiciabilidad exige evaluar si la parte reclamante posee legitimación activa. *Hernández, Santa v. Srio. de Hacienda, supra,* págs. 738-739*; Hernández Torres v. Gobernador*, 129 DPR 824, 835 (1992). La legitimación activa significa "la capacidad que se le requiere a la parte promovente de una acción para comparecer como litigante ante el tribunal, realizar con eficiencia actos procesales y, de esta forma, obtener una sentencia vinculante". *Ramos, Méndez v. García García, supra,* pág. 394; *Bhatia Gautier v. Gobernador, supra*, pág. 69. En cumplimento con esta doctrina, la parte que solicita un remedio judicial debe demostrar que: (1) ha sufrido un daño claro y palpable; (2) el daño es real, inmediato y preciso, no abstracto o hipotético; (3) existe una conexión entre el daño sufrido y la causa de acción ejercitada; y (4) la causa de acción surge al palio de la Constitución o de una ley. *Hernández, Santa v. Srio. de Hacienda, supra*, pág. 739; *Bhatia Gautier v. Gobernador, supra*, pág. 69.

Estos criterios requieren que el promovente demuestre al tribunal que su interés es de tal índole que, con toda probabilidad, habrá de proseguir su causa de acción vigorosamente y habrá de traer a la atención del tribunal las cuestiones en controversia. *Ramos, Méndez v. García García, supra*, pág. 394; *Sánchez et al. v. Srio. de Justicia et al.,* 157 DPR 360, 371 (2002). Esta exigencia

difiere de otros elementos de justiciabilidad, pues gira primordialmente en torno a la parte que prosigue la acción y secundariamente en cuanto a las cuestiones a adjudicarse. *Hernández, Santa v. Srio. de Hacienda, supra*, pág. 739*; Col. Ópticos de P.R. v. Vani Visual Center*, 124 DPR 559, 564 (1989). Sobre este particular, el Tribunal Supremo ha reiterado que ante una alegación de falta de legitimación activa, corresponde adoptar el siguiente análisis jurisprudencial:

> Cuando se cuestiona la legitimación de una parte para entablar un pleito, el juzgador debe tomar como ciertas las alegaciones del reclamante e interpretarlas desde el punto de vista más favorable a éste. Nuestra jurisprudencia ha interpretado de forma flexible y liberal los requisitos de legitimación activa durante las últimas décadas, ya que de lo contrario se les cerrarían las puertas de los tribunales a aquellas personas y entidades que han sido adversamente afectadas por actuaciones del Estado o de personas particulares y que presentan reclamaciones que pueden ser atendidas debidamente por el Poder Judicial. *Crespo v. Cintrón,* 159 DPR 290, 299 (2003); *Col. Ópticos de P.R. v. Vani Visual Center, supra,* pág. 567.

En lo pertinente a la controversia, la Regla 15.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 15.1, reconoce la legitimación activa de una parte reclamante en las siguientes circunstancias:

> **Todo pleito se tramitará a nombre de la persona que por ley tenga el derecho que se reclama, pero una persona autorizada por ley podrá demandar sin el concurso de aquella para cuyo beneficio se hace la reclamación; y cuando por ley así se disponga, podrá presentarse una reclamación a nombre del Estado Libre Asociado de Puerto Rico para beneficio de otra persona. No se desestimará un pleito por razón de no haberse tramitado a nombre de la persona que por ley tiene el derecho que se reclama hasta que, luego de levantarse la objeción, se haya concedido un tiempo razonable para que la persona con derecho ratifique la presentación del pleito, o se una al mismo, o se sustituya en lugar de la parte promovente y tal ratificación, unión o sustitución tendrá el mismo efecto que si el pleito se hubiese incoado por la persona con derecho**. (Énfasis nuestro).

Nótese que, por lo general, se admite la interposición de una reclamación por persona distinta a la interesada. *Martínez v. Soc. de Gananciales*, 145 DPR 93, 106 (1998). Ello implica que no se

desestimará un pleito por razón de no tramitarse a nombre de dicha persona hasta que, luego de levantarse la objeción, se haya concedido tiempo un tiempo razonable a los fines de que la persona con derecho ratifique la presentación del pleito o se una al mismo, o se sustituya en lugar del promovente. R. Hernández Colón, *Práctica jurídica de Puerto Rico: Derecho procesal civil*, 6ta edición, Lexis Nexis, (2017), pág. 118.

### C. *Desestimación al amparo de la Regla 10.2(5) de Procedimiento Civil*

En nuestro esquema procesal, la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, permite a la parte demandada solicitar la desestimación de la acción legal antes de contestarla "cuando es evidente de las alegaciones de la demanda que alguna de las defensas afirmativas prosperará". *Conde Cruz v. Resto Rodríguez et al.*, 205 DPR 1043, 1065 (2020). La precitada regla fija los siguientes fundamentos para solicitar la desestimación: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; **(5) dejar de exponer una reclamación que justifique la concesión de un remedio;** y (6) dejar de acumular una parte indispensable. 32 LPRA Ap. V, R. 10.2. (Énfasis nuestro).

En lo pertinente, el inciso (5) de la Regla 10.2 de Procedimiento Civil, *supra*, permite la desestimación de una demanda bajo el fundamento de que no expone una reclamación que justifique la concesión de un remedio. En este contexto, los tribunales están obligados a tomar como ciertos todos los hechos bien alegados en la demanda y, a su vez, considerarlos de la forma más favorables a la parte demandante. *López García v. López García*, 200 DPR 50, 69 (2018); *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank*, 193 DPR 38, 49 (2015). En específico, debe considerar ciertos todos

los hechos bien alegados en la demanda que hayan sido aseverados de manera clara y concluyente, y que de su faz no den margen a dudas. *Accurate Solutions v. Heritage Environmental*, 193 DPR 423, 433 (2015).

No obstante, "no procede la desestimación a menos que se deduzca con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo a su reclamación". *El Día, Inc. v. Mun. de Guaynabo*, 187 DPR 811, 821 (2013); *Consejo Titulares v. Gómez Estremera*, 184 DPR 407, 423 (2012). Ahora bien, no procede la desestimación si la demanda es susceptible de ser enmendada. *Accurate Sols. v. Heritage Environmental*, 193 DPR 423, 433 (2015)*; Aut. Tierras v. Moreno & Ruiz Dev. Corp.,* 174 DPR 409, 429 (2008).

Ante una moción de tal naturaleza, "resulta evidente interpretar las alegaciones conjunta y liberalmente a favor del promovido". *Torres, Torres v. Torres Serrano*, 179 DPR 481, 502 (2010); *Sánchez v. Aut. de Los Puertos*, 153 DPR 559, 570 (2001). El tribunal debe examinar "si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación válida". *Colón v. Lotería*, 167 DPR 625, 649 (2006); *Pressure Vessels P.R. v. Empire Gas P.R.*, 137 DPR 497, 505 (1994).

### *E. Petición de exequátur*

En nuestro ordenamiento jurídico, las sentencias y las órdenes dictadas por los tribunales de un estado de la Unión o país extranjero no operan en forma directa o *ex proprio vigore. Colón Vega v. Diaz Lebrón*, 211 DPR 548, 557 (2023); *Rodríguez Contreras v. E.L.A.,* 183 DPR 505, 516 (2011). En vista de ello, contamos con el procedimiento de exequátur, el cual permite el reconocimiento judicial de una sentencia extranjera en donde se pretende hacer efectiva. *Gulf Petroleum et al. v. Camioneros*, 199 DPR 962, 966

(2018). Su trámite puede ser *ex parte* u ordinario. Regla 55.1 de Procedimiento Civil, 32 LPRA, Ap. V, R. 55.1.

Así pues, el propósito de este mecanismo es garantizar a las partes afectadas por una sentencia extranjera el debido proceso de ley, y así brindarles la oportunidad para ser escuchadas y presentar sus defensas. *Toro Avilés v. P.R. Telephone Co.,* 177 DP 369, 375 (2009); *Mench v. Mangual,* 161 DPR 851, 856 (2004). En este procedimiento, las sentencias extranjeras son las dictadas por tribunales ajenos al Estado Libre Asociado, "tanto aquellas dictadas por tribunales de países extranjeros como las dictadas por tribunales estatales de Estados Unidos". *Gulf Petroleum et al. v. Camioneros, supra,* pág. 966.

A esos fines, la Regla 55.2(a) de Procedimiento Civil, 32 LPRA, Ap. V, R. 55.2(a), establece que en los casos ordinarios la parte interesada presentará ante la sala correspondiente del Tribunal de Primera Instancia una demanda contra todas las demás personas afectadas por la sentencia de otra jurisdicción cuya convalidación y reconocimiento se solicita. Esta reclamación será acompañada de una copia certificada, legible, completa y en cumplimiento con los requisitos de las Reglas de Evidencia de la sentencia cuya convalidación y reconocimiento se solicita. Regla 55.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 55.3. A su vez, incluirá la traducción fiel y exacta al idioma español de la sentencia en caso de no haber sido redactada originalmente en el idioma español o en el idioma inglés. Íd.

Cumplido lo anterior y luego de resolver cualquier controversia procesal pertinente, el foro primaria estará en posición para dilucidar si la sentencia relativa a otra jurisdicción exhibe las normas prescritas por la Regla 55.5(b) de Procedimiento Civil, *supra*:

> **(b) Si se trata de una sentencia dictada en otra jurisdicción que no sea un estado de Estados Unidos o sus territorios:**

**(1) Que se haya dictado por un tribunal con jurisdicción sobre la persona y el asunto que sea objeto de la misma;**

**(2) que se haya dictado por un tribunal competente;**

**(3) que el tribunal que la emitió haya observado los principios básicos del debido proceso de ley;**

**(4) que el sistema bajo el cual fue dictada se distinga por su imparcialidad y por la ausencia de prejuicio contra las personas extranjeras;**

**(5) que no sea contraria al orden público;**

**(6) que no sea contraria a los principios básicos de justicia, y**

(7) **que no se haya obtenido mediante fraude**. 32 LPRA Ap. V, R. 55.5(b). (Énfasis nuestro).

En suma, el procedimiento de exequátur aplica exclusivamente a aquellas situaciones relacionadas con sentencias dictadas por tribunales que no formen parte de la jurisdicción puertorriqueña y, a su vez, los requisitos varían dependiendo de si la sentencia que se pretende validar es de un país extranjero, o de un estado de Estados Unidos. *Toro Avilés v. P.R. Telephone Co., supra,* pág. 376. Lo anterior responde a que "el derecho público de la mayor parte de las naciones del mundo civilizado requiere que los tribunales del foro donde se pretenden hacer efectivas sentencias extranjeras las reconozcan y convaliden". *Mench v. Mangual, supra*, pág. 856.

**III.**

En el presente recurso, The LandMark señala que Push Solutions Limited carece de legitimación activa para presentar la petición de exequátur. Particularmente aduce que dicha entidad se disolvió, por lo que, no tiene personalidad jurídica en la actualidad. Sostiene que cualquier derecho que tuviera la parte recurrida debió reclamarse ante la Corona del Reino Unido. En esa línea, argumenta que incidió el Tribunal de Primera Instancia al denegar la solicitud de desestimación.

En oposición, Push Solutions Limited alega que la acción legal presente constituye un procedimiento de convalidación y

reconocimiento judicial de la sentencia dictada en el Reino Unido. Explicó que dicho dictamen judicial se emitió a su favor. Arguye, a su vez, que The Landmark, quien fue debidamente emplazada a tenor con el Artículo 5 del Tratado de la Haya, debió levantar las defensas que ahora aborda en el caso instado ante el Tribunal del Reino Unido. Por lo anterior, contiende que no se justifica la intervención de este foro intermedio apelativo.

Luego de efectuar un examen sosegado de la controversia ante nuestra consideración, nos corresponde abstenernos de ejercer nuestras facultades revisoras en esta etapa. Véase *Torres González v. Zaragoza Meléndez*, supra, pág. 849. Al respecto, puntualizamos que aunque la Regla 52.1 de Procedimiento Civil, supra, nos delega la facultad para examinar la denegatoria de la solicitud de desestimación en cuestión, decidimos —amparados en nuestra discreción judicial— no intervenir en esta etapa interlocutoria a los fines de evitar cualquier pronunciamiento apelativo a destiempo en el caso de exequátur.

De igual forma, recordamos que el ordenamiento jurídico nos habilita exclusivamente a intervenir en aquellas etapas interlocutorias en las cuales medie una actuación arbitraria o caprichosa, un ejercicio de craso abuso de discreción, o una errónea interpretación o aplicación del derecho por parte del foro primario. Sin embargo, en el recurso presente no contemplamos indicios de tales escenarios de conformidad con los parámetros orientativos de la Regla 40 del Tribunal de Apelaciones, *supra.* Por tanto, procede denegar la expedición el auto de *certiorari* solicitado por The Landmark.

Por último, advertimos que este dictamen apelativo no prejuzga los méritos del caso, ni impide que una vez el foro primario dicte sentencia final respecto al procedimiento de exequátur, la

parte afectada presente el correspondiente recurso apelativo. Véase *Torres Martínez v. Torres Ghigliotty, supra,* págs. 98-99.

**IV.**

Por los fundamentos que anteceden, ***denegamos*** el auto de *certiorari* solicitado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones